and the Evergreen Association v. City of New York, 25-422 and 25-520, respectively. We will take, obviously, case number 422 first. However, to the extent that there are significant overlapping issues, it would be helpful, and you all can work this out a little bit, to not repeat particularly doctrinal arguments. I think we've got those well in mind. And to the extent that there are real differences between those two appeals, it would be useful for you all to highlight. Okay? Does that make sense? Absolutely, Your Honor. Wonderful. And thank you for coming. May it please the Court, Matt Bells for the Evergreen Association. This appeal primarily turns on a single threshold question, whether Evergreen has standing to bring a pre-enforcement First Amendment challenge to Section 203e, commonly known as the Boss Bill. Under this Court's precedent, the answer is yes. This Court applies a forgiving standard in First Amendment pre-enforcement cases. Evergreen needs to prove an intention to engage in conduct that is arguably prescribed by Section 203e. Where is the proof of that in this record? Well, I think there's proof. One, and Judge Nardacci cited some. She agreed that we were intending to, or she agreed that we had actually violated the statute by accessing this. The statute bars accessing an employee's reproductive health information, and Judge Nardacci agreed that when we, when my client asks an employee about their experiences with abortion, that that is barred by this statute. Right, so there's three prohibitions, right? You can't fire somebody, take an adverse employment action based on reproductive health decisions. You can't have them sign an agreement not to make a reproductive health decision, and you can't access the information. So taking those in reverse order, the district court in this case said, you arguably are violating the statute in the third way because you ask about the medical history of employees, right? Correct, and then she went on. So in terms of that holding, everything depends on whether there's a credible threat of enforcement. That's exactly right. She went on, Judge Nardacci went on to say there was no credible threat of enforcement, which would get you out. I think she was wrong. Right, and so in terms of whether there's a credible threat of enforcement, I mean, we've said in cases that as long as the statute is recent and not moribund and there hasn't been a disavowal by the government to enforce it, we presume that it's going to be enforced. Absolutely, that's correct. Has there been a disavowal in this case? No, I mean, they've fought us constantly in this case, and they continue to. And on the second one about the agreement, you know, the state is making this distinction between the protected status and beliefs about the status. Do you agree that the statute only criminalizes discrimination based on the status but allows you to require employees to profess beliefs about the status? No, I think that's, I mean, are you talking about the waiver provision? No, I'm talking about the idea, what the state says. The belief versus conduct. But they're allowed to require employees to say abortion is murder and fire them. If they disavow that belief, you just can't fire and fire them if they have had an abortion. Right, no, I disagree with that. I mean, what I picture is my client firing, my client having a conversation with an employee and saying, you know, you had an abortion, we think that's wrong. And then they have a back and forth, and my client fires them. And the person sues. The person takes my client to court, and Evergreen defends it by saying, listen, we weren't firing them because of the abortion. We were firing them because of what they said about the abortion. I can't imagine that would hold up. And New York's discrimination law talks about but-for causes, and I think the abortion would be a but-for cause. Regardless of whether the abortion is a but-for cause, I mean, is it really true that if an anti-discrimination law prohibits discrimination on the basis of a status, it allows the employer to require employees to have beliefs about the status? So, like, if anti-discrimination laws say you can't discriminate on the basis of race, does it mean that an employer can require employees to profess beliefs about race, even if they are willing to hire members of different races? Like, so, if they're willing to hire minority employees, but everybody has to affirm that the white race is the superior race, would that violate the anti-discrimination laws? Well, I'm not sure I totally understand, but. . . Related to beliefs and conduct. Yeah, our position from the beginning is that beliefs and conduct are very much intertwined. . . Right, so, like, the anti-discrimination laws say, you know, you can't discriminate on the basis of sexual orientation. The idea that an employer says, well, I'm willing to hire gay employees as long as all my employees are willing to profess the belief that homosexuality is a moral abomination. Like, and that's only a belief about the status and not the status itself. Do you think the New York State Human Rights Commission would accept that distinction and say that that's allowed? No. No, I mean, not if there has been an abortions at some point, and that is the, you know, the instigating factor. And then there was a conversation about beliefs or something like that. It's all going to relate back to the decision. A standing law requires that there be a credible threat of prosecution, that the injury be certainly impending, that it be sufficiently imminent. And so where did the district court err in saying that there wasn't a credible threat of prosecution? What evidence is there of an imminent injury or certainly impending injury? Well, like Judge Minaski said, I think there hasn't been a disavowal and there hasn't been, the statute's not more abundant. I don't think anybody argues those. So there's a presumption against the government that there will be a credible threat. But then there's a question as to whether you're doing something that violates the statute, right? Yeah, and I think Judge Nardacci agreed that we did. On the third thing. On the third thing.  And I think on the waiver, I think. My question is, I mean, I believe Evergreen takes the position that it hasn't changed its behavior because of the statute. It's sticking to its guns on its beliefs. What evidence is there that there is an impending prosecution or that the state or the city are going to come after Evergreen for this conduct that's been going on apparently for quite a long time? Well, they haven't disavowed it. So any evidence of an impending prosecution other than they haven't disavowed it? And they've cited the importance of this law all along. They're saying there's a compelling interest in the law, that it's, you know, it serves vital interests. And there's been, you know, they haven't specifically said they are going to prosecute Evergreen. Their major defense. They could have prosecuted Evergreen in the last five years, right? I don't know what they'll say to the answer to that question. I mean, I think they want to, I think part of what the state wants to do is narrow the statute so that it doesn't affect Evergreen to win this case in certain ways. But I mean, our position is... Evergreen has violated the statute. You've told us that, that Judge Nardacci so held. The state hasn't come after Evergreen, right? That's true. Is there any, have there been any warning letters, any threats? No, I don't believe they would come after us during this litigation, certainly, but... And so let's say litigation ends, they come after, you can assert all these arguments then, right? Yes, I don't think we have to wait under any legal precedent, wait until prosecution to, I mean, to assert our rights. You have to comply with the rules on pre-enforcement standing. Right. And so the question, what, again, is there a credible threat of prosecution? What's the basis for the argument? Yeah, and the only... Just in terms of our case law, right? I asked a question. On the credible threat enforcement thing, the only thing the state has really said is, you know, we haven't enforced this thing yet. I mean, it's been five years. That's enough in your mind? It's been five years. Is that enough? No, I think most, there are cases that say when you've got a relatively new statute, it doesn't matter that it hasn't been enforced. I mean, this thing is still hanging out there. It carries criminal penalties. I think if we waited until prosecution, first of all, you'd have an employment decision. We've been in this litigation for six years. It makes no sense to have an employee come to an employer, they've got a dispute, and then they've got to wait another, you know, maybe it could go faster than this. Three, four years. The Supreme Court says in BAPT you don't need warning letters and threats from the government, right? If there's a law on the books, if it's not more abundant, the Supreme Court hasn't disavowed enforcement, we're going to presume it's going to be enforced, right? That's exactly right. I mean, it's... The real question is not really whether, like, they're going to enforce it unless they have disavowed it. The question is whether you're going to engage in conduct that's prohibited by the statute. And I think we've shown that. We've shown that we have... I agree that Judge Nirdachi said that you already were arguably in violation of the statute on the third thing. I want to ask about the second thing. So the statute also prohibits an agreement that somebody give up their right to engage in reproductive health decisions, right? Right. And you require employees to sign a pro-life commitment, right? Yeah. So the district court distinguishes between the beliefs about the status and the status, which I don't know if that's justified or not. But even accepting that, you as the employer who writes the employment agreement and enforces it, you're saying the way we understand this agreement is that if somebody has an abortion after signing the agreement, that would be a violation of the agreement and we will fire that person, right? Yeah. And first of all... So the district court is faced with an employment agreement written by an employer who says the way we understand this agreement is that it prohibits somebody from having an abortion, right? Correct. And yet the district court says there's no question of material fact that it certainly does not believe that. That does not mean that. Yes. I mean, that doesn't, like, just on its face, like, doesn't that, like, isn't there at least a question of material fact if that's the way the employer understands the agreement it wrote? And that's the person who, that's the entity that's going to enforce it, that there's got to be at least a question of material fact as to whether that's what it means? Right. And I think one of the, the law is if this is arguably prescribed by the statute, then you've proven enough. And we've got, the waiver says, you know, you have to uphold our position that abortion claims an innocent life. That is diametrically opposed to having an abortion. I mean, the two things are not, they're not compatible. I'll sit down for a minute. Thank you so much.  We'll hear from the counsel for the state. Good morning. Morning. May it please the Court, Dustin Brockner on behalf of dependents. The district court correctly held that plaintiff's expressive association claim failed for lack of standing. I'd like to jump to the access provision, which plaintiff says, argues that interview, if interview questions violates that provision. And that argument fails, I want to say, for two separate reasons. Just first turning to it, it's, that provision says, accessing an employee's, employee's personal health information. We don't read this. And we make this clear in our brief. We said this provision is best read as not applying to questioning an applicant for employment about their experience with abortion. And this is clear. We spell this out in our brief. Why? To date, the labor law uses the term employee and distinguishes employee from someone who is an applicant for employment. The labor law section 2, subdivision 5. So the reason it doesn't apply is because the boss bill doesn't apply to prospective employees, only to current employees? That is how we read it, Your Honor. So there's no. It doesn't even arguably apply to prospective employees? Plaintiff, plaintiff has never explained why. We previously in this case did not take a position because previously in this case. The motion to dismiss in this case before, you know, our earlier decision said it applies to prospective employees as well as current employees, right? Your Honor, the last part of that opinion, I don't mean to quibble with the author, but it says an employee is someone who has page 295, has been hired to work, citing a New York court decision. So we do not need to take it. Also, I just want to frame it. No, I understand. I'm not sort of saying what the opinion said. I'm saying, like, you in the motion to dismiss that you filed in that case said that it applies. You haven't always taken the position that it doesn't apply to prospective employees, right? We previously did not take a position because, if I could have a moment to talk about what the previous litigation was, it was a motion to dismiss, and on their expressive association claim, their only focus is the anti-discrimination provision. And for that purpose, it doesn't, you know, their hiring versus firing decisions doesn't matter. Now, after it's turned out to be entirely speculative that they'll ever violate that provision, they're now trying to find new provisions that they want to be violating, and there's no intent to enforce. So even if it doesn't apply to prospective employees, if they ask about it and then somebody becomes an employee and they retain the information, is that a violation? You'd have to say it. Can you just repeat it? And I just want to say they don't have any evidence. You're acknowledging that they collect this information from people who apply for employment. If they keep it for current employees and it's, like, on file, doesn't that mean they have a record of the employee's medical history? No, Your Honor. I just don't. They don't have any evidence saying that we write it down and we keep it in a file. There's nothing like that. Yeah, they said there's a verbal conversation about asking someone about their experience with abortion. But if they kept that information for current employees, that would be a violation. Depends on what that information is, Your Honor, and I think the fact that we're working so hard to envision a situation where there's a violation. I'm not working hard. I mean, the district court thought that this was a violation, right? No, Your Honor. Or arguably a violation, which is the standard. Well, Your Honor, they never – only because they just accepted without any analysis that the word employee means applicant for employment. Without any textual analysis, plaintiff has never cited anything in the text, legislative history, or precedent to suggest that the word employee, as used in Article 7 of labor law, extends to applicants for employment. If there's questions about this and it's dispositive, of course, you're right. We suggest you could certify it to the New York Court of Appeals on that question. So if I think that, you know, the way the district court is right, that it at least arguably applies, and so then I think things turn whether there's a credible threat of enforcement. Has the state disavowed the application of the law to prospective employees? Are you reserving the right to prosecute employers for its application to prospective employees? I want to be precise here. So it's about disavow or otherwise no intent to enforce. And when we say we don't read this provision, and in fact it is best read as not applying to applicants, that is a reason not to think that we are going to enforce it. And I can say that we do not, based on the summary judgment record, and without further evidence or based solely on the summary judgment record, not including additional hypothetical facts, we would not intend or we disavow enforcing 203E against plaintiffs merely for verbally questioning applicants about their experience with abortion. As to applicants for asking applicants about the only thing in the record. On this summary judgment record. On this record, correct. And similarly. Can I ask about what I was saying earlier about the difference between the status and beliefs about the status? So is that the way you think the anti-discrimination laws normally work? So if discrimination among employees on the basis of race is prohibited, an employer can still require employees to profess beliefs about race? Your Honor, that's sort of hard to go through the rubric, because this is actually about reproductive health decisions. I just want to talk about how anti-discrimination laws normally work. So if Walmart says, we will hire employees of any race, but we require all our employees to profess the belief that the white race is the superior race, and if they express a different belief, we will fire them. Would that violate the prohibition against discrimination on the basis of race? Your Honor, it's very – I don't know precisely how to make that enforcement decision or interpretation of a different statute on my feet. I would like to talk about, in this case, what it actually – what they're saying is. Well, in this case, so the status is having had an abortion, right? So you're saying that an employer can require employees to profess beliefs about race. That status, as long as they don't discriminate on the basis of the status. So if, like, Walmart said, all our employees in New York need to profess the belief that abortion is murder, and if they don't profess that belief or they profess a different belief, we will fire them from Walmart. You're saying Walmart would not be in violation of any law in the State of New York. So those are employees. Yeah, fine. Okay, can I – that is very different from what we have here because – How is that different? Well, I would like to talk about the actual statement of position. So you're saying that employers do not violate the boss bill by requiring employees to profess a belief about abortion. The law here does distinguish between taking – making decisions based on someone's reproductive health decisions and making decisions based on someone's – discriminating based on their beliefs and ability to do the job. And if their beliefs are part of the ability to do the job. And if I could talk about – Wait, wait, wait, wait, wait, wait. Sorry. So you're saying it might be that Walmart can't require the employees to profess a belief about abortion, but Evergreen can require that because for Evergreen, that's part of doing the job. Is that right? For Evergreen, that is correct, and I will say for – Hold on, that's correct. Doesn't that mean that what you're saying is because Evergreen is an expressive association where part of their mission is beliefs about abortion, they have an as-applied carve-out from the normal operation of the law? Sorry, Your Honor, you're asking me to draw these fine lines on the fly, and I do not mean to say that. They're not fine lines. You're saying Evergreen doesn't have an intent to violate the statute because all it does is require employees to profess beliefs about abortion but doesn't require them to have an abortion or not to have an abortion. But you're saying that means that they're not violating the statute, so that should apply to every employer in New York, right? Well, it is true. On this statement, if I could have a moment to talk about this statement of position form, which is not – and it doesn't say if you have an abortion, you're required. It decidedly does not say that. It says first – But your argument depends on everybody being able to do that. So if Walmart says all our employees must affirm that abortion is murder, and if they ever say abortion is acceptable, we will fire them, that would not be a violation of the statute. I will say that we do not read the statement of position that they have their employees sign. We have no intention of enforcing the law based on the statement of position that they have, which is finer than what you're saying. But if Walmart had the exact same – Just so that I understand his response, but if you want to ask a question, go ahead. Yeah, so if Walmart had the exact same requirement that you need to affirm this pro-life commitment and if you don't, we'll fire you, that would not be a violation of the boss bill? So because – can I just – what I am – what's causing me the difficulty is that what you're saying is different than the statement of position form that they ask their employees to sign because it doesn't say – it says agree to uphold our positions. It's a positional statement. But the position is abortion is murder, right? And we respect the – and in the circumstances in which it would lead to the death of the mother, we will respect the parent's decision. It doesn't then go on to say we will necessarily fire them. And we talk about this, and you talk about what plaintiffs, how they interpret it. I'm sorry. You're saying that they require them to sign this as an employment agreement, but it doesn't specifically say we'll fire you if you violate it, and so therefore it might be okay? I mean, whatever. Let me just accept that for the time being. So if Walmart said whenever we hire an employee at Walmart in New York, you must sign a statement that affirms abortion is murder, you're saying that that wouldn't violate any statutes? That they will agree to uphold Walmart's beliefs. That abortion is murder. They agree with Walmart's beliefs. Yes, they can make distinctions based on employees' beliefs. Really? Not reproductive health decisions themselves. If Walmart says anybody who expresses a pro-choice position will be fired from Walmart, there's no law in the state of New York that protects that employee from being fired. Sorry, Your Honor. No law? I can't talk about that. But the boss bill doesn't. Yeah. It doesn't prescribe employers from making decisions based on the beliefs of their employees. That is how we'll read it. Would you apply that to any other anti-discrimination statute? So if, in fact, there's a prohibition against discrimination on the basis of sexual orientation, if Walmart says we will hire people who have any sexual orientation as long as that person affirms that homosexuality is a moral abomination, you're saying that wouldn't violate the prohibition against discrimination? If they said we want only like-minded individuals who – If the position of Walmart is that homosexuality is immoral and will only hire people and preserve the employment of people who affirm that belief, you're saying that wouldn't violate the anti-discrimination laws? But they're hiring individuals who are – Yeah, they just have to be repentant, the way that this is described. Exactly. Being repentant is the beliefs and how you think about it. If you're making decisions based on someone's status, that would be prohibited. Yeah, but what I'm saying is that that's very weird because normally we say that if you create a workplace environment that's hostile to a status, that that is also prohibited by the anti-discrimination laws. So if I'm willing to hire women but all the women must affirm that the role of women is to be in the home and not in the workplace, the New York State Human Rights Division is going to bring an action against that employer, right? So why is this like the only anti-discrimination law that doesn't reach these kinds of requirements about beliefs? I'd like to make a few responses to that if I have a moment. Okay. First, Labor Law 203E isn't in – isn't – I'm not – the Human Division of Rights isn't a defendant here. We're not talking about bringing all the case law and all the developed body of law with respect to anti-discrimination law. Okay, but that means you're saying that this law does work differently from other laws. It does because it's about decisions, too. It's not about statuses. That is correct. And the only question presented by this case is there are imminent threat that the defendants will likely enforce this law based on the summary judgment record. And we do not intend to enforce the law for the position of statement form, J.A. 82 to 85, in the record. They've presented that to us. We've reviewed it. And also, if I have a moment, then – Right, but they're sort of saying that that's not credible. And so that's why I'm asking if, like, any other employer like Walmart also required a pro-life commitment, would you say that you'd never bring an action against them? And you're not committing to that. You're saying maybe Walmart would be violating the statute if they required all employees to affirm that abortion is murder. It would depend on what the position – the form says. It would depend – Well, it would say the exact same thing. It says, you know, we believe abortion is murder and – The exact position of statement form. Yeah. We don't – we took this position. We don't read that as arguably violating the law with respect to – It's even arguably violating it. Even though you admit that normally the anti-discrimination laws would reach that kind of – the beliefs about the status. Yes, and I understand we've gone down this road, but I also want to just point out, and I would be remiss not to, in arguing standing below in the district court, they never talked about this provision at all. None of these – none of these issues. Sorry. Were any of these issues raised? No. We're very far afield, Your Honor, so I'm having difficulty answering these questions because we're asking how a different – you know, we're thinking about this in a different – under a different executive law. Let me ask you a question, Mr. Buckner, and I'm going to give you a minute to answer my question. Is there anything that you think we're confused by that you want to, in the minute I'm giving you, disabuse us of? Anything you want to say? Well, one thing, as to the waiver provision, they did not rely on that as a basis for standing. The district court, in a footnote, then says, although no one mentioned it in standing, I don't think this violates the law. On appeal, they say we want to – it violates the law because we want to have our employees agree that abortion is murder, and then that necessarily means we'll fire them for having an abortion. And that's – we don't share that view of the agreement. It doesn't say that. If it did say we will necessarily fire you in X circumstance, that would be a different case. So you're saying that if, in fact, the agreement says all the employees confirm that abortion is murder, and if you get an abortion, we'll fire you, you're saying that would violate the statute, right? If it said that expressly. If it said you will be fired for having an abortion, which is not what this agreement says at all. It would violate the statute. At least arguably, yes, Your Honor. Whether we would intend to enforce it, again – and is responsible for enforcing it, says that's what it means. Like, it's impossible for somebody to adhere to this agreement and then have an abortion. And so if somebody did, we'd think that they violated the agreement and we would fire them. So I get that maybe that's not dispositive, but isn't it at least a question of material fact as to whether that's what it means when the employer who wrote the agreement and is going to enforce it says this is the way we understand it? No standing for two reasons for that argument. First, if you put aside what they want to say on appeal and you look to the plaintiff's deposition of Reverend Hardin, JA 187, he describes the form as we wanted people to understand our positions. It's just continuing our prior practice of making sure that our employees understood what our beliefs were. That's how we describe it. No, I get it. Your position is they're just sort of saying this is what we believe and they're never actually going to fire anybody on the basis of it, whatever. But the employer is saying that is how we understand it. So I'm not saying that it means they necessarily win. I'm saying isn't it at least a question of material fact as to whether that's what it means when the employer that drafted the agreement says that's the way we understand it and that's how we're going to enforce it? Putting aside that it was waived as a basis for standing, putting aside the evidence that I just cited by their own — What do you mean it was waived as a basis for standing? Isn't that the whole essence of the idea as to whether it's — why this isn't arguably violating of the statute? Because — because — It's more about beliefs and not about the — Yeah, no, no, sorry. The waiver provision, again, in the district court, they never said look at our statement of position form. We're violating the statute because of that. The district court acknowledged that. That was not the basis for standing. And then put aside — and there's also evidence where they didn't describe it as the way they want to describe it now, where they said it's a position of statement form. We just want to make clear what our positions are.  Put aside the waiver. Like, so — And then we — Let's put that aside. Is this where the case of the employer says this is how I understand it and how I'm going to enforce it? Wouldn't that at least be a question of material fact as to whether that's what the employment agreement means? It doesn't — doesn't — well, no, I would want to say there's no — there's no standing for two reasons. As we read this statement of position, we don't intend to enforce. We don't think this is a violation of statute. And how they — whether a future decision, whether they decide to enforce it in a specific way, there's no evidence as to that. We'd have to — as I'm saying, based on the summary judgment, just based on the form itself. Yeah, but I'm not talking about the first thing, about whether they're going to take the adverse employment action. I'm talking about the provision that says you're not allowed to require employees to agree not to make a reproductive health decision. So if they're saying we understand this agreement that we drafted and make employees sign to be an agreement not to have an abortion, isn't there at least a question of material fact that that's what it means? It's not enough. I don't — no, in the sense that the question here is standing arguably prescribed, and that's an objective inquiry and what's in their heart of hearts, but they didn't put on the page, does not create a violation of the statute. And then also, we don't intend to enforce it. If they wrote their understanding expressly into the agreement, it would violate the statute, because it would be an agreement not to have an abortion. So if this case is dismissed for lack of standing, which is without prejudice, and tomorrow they just wrote that expressly into the agreement because now they think it's implied, but if they just wrote it expressly into the agreement, then there would be standing because that would violate the statute. Yeah, it's very hard for me to make — whether there would be an imminent threat of credible enforcement by us — But that's the standard. The threat of enforcement, I'm asking about whether it arguably violates the statute. I mean, I think you said earlier, if they said you agree not to have an abortion, it would violate the statute, right? If it said we will — if you agree to waive your rights to make your own reproductive health decisions, which is just what the statute says, then yes. It would violate the statute. Yes, it would. And so the employer is saying that's the way we understand the agreement, which seems to me to create at least a question of material fact. You're saying it doesn't, but fine, maybe it doesn't. It doesn't. It means that tomorrow they could write that into the agreement, and then there would be standing, right? Yes, Your Honor, and the whole point is you can't use speculation and conjecture about future uncertain events to have standing now, and especially when we're saying there's no intent. Thank you. Thank you very much. Mr. Phillips? Yes, Your Honor. On the waiver provision, first I'd like to say it specifically says that employees are to uphold the position on abortion. I believe that means something in terms of actions. Well, you just heard your friend on the other side say that on this record we disavow. What's your response to that? Yeah, I think they — as I understand it, they've said they've disavowed it on the waiver provision and on the item that Judge Nardacci found. They disavowed on the medical questions. The medical questions as well. I mean, we welcome that at this point. I think it's a form of voluntary cessation that they're just backing off as the case goes on. We would have liked to see those things, you know, years ago. On the job applicant item, they have fought us. I mean, I stood here five years ago in this very courtroom, and Judge Nardini asked a colleague of the other attorney general's office whether this law applied to prospective employees, and the lawyer said it's an open question. We don't know. It's now been put into district court records, a motion to dismiss from the attorney general and the district court's opinion that it applies to prospective employees. Upon the merits, would you just briefly address CompassCare? Yes. CompassCare, I think, clarified what we need to prove in terms of our expressive association claim. It said that we need to show specific employment positions that they would be affected by being, that our message could be jeopardized if we hired, for instance, someone who had an abortion. So we have, Jim, Reverend Hardin went through this very clearly in his deposition and described that not just the counselor, there's a counselor that works for Evergreen, there's also ultrasonographers and LPNs, nurses, that they all interface with clients, that they all have discussions that they have caused women to reverse their decision to have abortions. There is one material care, material delivery person who doesn't have any face-to-face interactions with clients. I don't know if that would exclude that position. Does it matter about face-to-face interactions with clients? So Evergreen is a small operation of, like, six employees, right? Right, and their position, yeah. So for you, like, expressive association is about the associating with each other, not necessarily the, it's not necessarily speech, right? Right. But you would say, Mr. Belts, that CompassCare talks about client-facing interactions, correct? Yeah, I don't think it says it's determinative, but I think that's a factor we should look at. It's a factor.  Yeah, but what I'm suggesting is there might be larger operations where it doesn't matter if you have some employees who disagree with the mission of the organization, but, you know, one other factor is the small size of your client. Right, and Reverend Hardin said, you know, all of our employees are messengers. You know, I don't think, if you've got six employees, one out of six is, you know, doing something against the mission. I think that's a problem no matter who it is. It's going to undermine the mission. And that's true for, in your view, every employer. Every employer, for example, in your... Yeah, like Judge Menasci said, there could be... It could be someone, it could be an employer with a materially different point of view on abortion, for example, or reproductive health issues. Is that right? Well, if they didn't have our point of view on abortion, they wouldn't be affected by the boss bill, I don't think. But, I mean, our mission is to prevent abortion, right? I mean, that's the mission. So I don't know that... Can I ask about the implications of the government now saying that they disavow, at least to some extent, so if they weren't disavowing certain kinds of enforcement at the outset of the litigation, and now they do, isn't the way we should think about that, that part of the claims are now moot if the government disavows? It's not that there wasn't adversity between the parties when you brought the lawsuit, right? I think Trinity Lutheran, I think it's footnote one, talks about voluntary cessation, that it doesn't moot a case. If the government sort of reverses their position late on a case, I think we still deserve... Right, so it's not a question of standing as to whether they now disavow, it's a question of mootness and we evaluate whether it meets the standards, you know, it's voluntary cessation or whatever. Right. That's the way we should think about it. Right, I don't think that would moot the case, the voluntary cessation, but... So can I ask you about this question? So what about what the district court says... So, like I said, there's three categories, whether you're going to take an adverse action against an employee, whether you're requiring employees to agree not to exercise reproductive health decision-making, and whether you're asking about medical history. So we talked about the second and third as to whether that's what you're doing now. On the first one, you know, the district court says, well, look, you know, Evergreen is not actively hiring employees, it doesn't have a lot of employees, it's not really obvious that you're going to hire anybody in the near future, and so, you know, for that reason alone, it's not really clear, like, the government would come after you. What about that argument? I think Judge Harden actually handled that fairly. She said we recognize, looking at the employment past, that this is an organization that hires frequently, something like they've had 48 employees since 2009, or 2019, I believe, something like that. So I don't think the fact that, you know, Judge Harden said on his deposition date they weren't hiring that date, I don't think that carries a lot of weight. You know, it meant they weren't hiring on that one date. So do you expect in the near future to hire additional employees, to take on additional employees? I don't know what their practices are at this point. There's nothing on this record. Excuse me? There's nothing on this record. No, I believe that Judge Naranchi handled the situation correctly and said they hire frequently. Okay. Thank you very much. Thank you very much.